# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | | |
|---|---|---|
| TOMMY FLOYD MOCK, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CV614-001 |
| CAROLYN W. COLVIN, *Acting Commissioner of Social Security*, | ) ) ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Tommy Floyd Mock appeals the Social Security Commissioner's denial of his application for Supplemental Security Income (SSI) and disability insurance benefits (DIB). Doc. 1.[1] That denial followed Mock's successful administrative appeal of an Administrative Law Judge's (ALJ's) adverse decision. Doc. 10-3. On administrative remand, the ALJ again denied him benefits after a second hearing. Doc. 10-2 at 13. Mock has exhausted further administrative review, doc. 10-2 at 2, so his claims are now ripe for judicial review.

---

[1] All documents referenced here have been "E-filed." The Court is thus using the electronic pagination placed on the top of each page by the Court's CM/ECF software. It may not line up with pagination on the original, printed page of each document.

## I. BACKGROUND

Mock, 39 at the time he testified in support of his SSI/disability application for disability since June 1, 2006, has a limited education but can communicate in English. Doc. 10-2 at 24, 74-75, 84. At 14, he was in a truck accident that damaged his left wrist. His left hand now hangs fused, in claw-like fashion. With that arm he can squeeze and hold up to 14 pound objects -- but "[t]hat's not really what I can pick up" with it. *Id.* at 78. The accident also fractured his back which, though he has not had surgery on it, nevertheless "constantly hurts all the time." *Id.* at 80-81.

Saddled with what he calls "bone-to-bone" arthritic knees, *id.* at 75,[2] Mock is largely unemployed (though he has worked some jobs the ALJ found that he has otherwise engaged in no "substantial gainful activity," *id.* at 74; doc. 10-3 at 11). With his wife and her two children, he lives with his disabled father. Doc. 10-2 at 71-72. He does not go for walks but attends church about once or twice a month.

---

[2] He also claims arthritic pain "in my hands and in my knees and in my neck. That's the majority. And my back, my lower back where it got fractured in my wreck. It hurts a lot." Doc. 10-2 at 80. The ALJ corrected Mock at the hearing: "Q. I don't really see an arthritic diagnosis. More so, I see a cellulitis diagnosis. A. Yeah, I will not mislead the Court, Your Honor." *Id.* at 82.

He cannot assist with housework and he spends his days "[w]atch[ing] TV pretty much." *Id.* at 72-73. He has suffered from seizures but they stopped about four years prior to the second (2012) hearing held in his case. *Id.* at 76. He has no drug or alcohol issues. *Id.* at 76-77.

The ALJ did not consider his past work. Doc. 10-2 at 74. He did consider, however, Mock's mental health history. Doc. 10-3 at 16. Dr. John C. Whitley indicated that Mock had "a lot of anger issues" -- the persistence of which Mock attributes to his bipolar disorder. Doc. 10-2 at 79-80; *see also id.* at 80 ("I have a real short fuse when it comes to dealing with anything aggravating at all. . . . I don't like to deal with a lot of people either."). Plaintiff also claims to have suffered from chest pains and numbness in his extremities. *Id.* at 83.

After reviewing Mock's medical records and hearing his testimony, the ALJ consulted a Vocational Expert (VE) by posing a hypothetical question based on the ALJ's determination of Mock's residual functional capacity (RFC) -- that he can perform a restricted range of light work.[3] Doc. 10-2 at 85. He accounted for Mock's left

---

[3] In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). *Saunders v. Colvin*, 2014 WL 7178511 at * 2 n. 2 (N.D. Fla. Dec. 15,

arm and wrist debilitations, limited lifting and carrying with his right arm to 14 pounds. Even at that, he limited lifting to no more than 14 pounds and substantial restrictions with his left hand. *Id.* at 86. The work "should not be frequent or constant with public, being no frequent or constant work; in a fast food restaurant or a retail department store setting in the mall where there's public." *Id.* The ALJ also limited concentration capabilities to "restricted." This would rule out work "in a fast food restaurant or a retail department store setting in the mall where there's public." *Id.* Hence, the VE was to assume that there would be some co-worker and supervisor contact on the job, but not public contact. *Id.* at 96.[4]

The VE opined that such an individual could perform work as a night watchman, a surveillance system monitor, or a mail clerk. Doc.

---

2014).

[4] In his colloquy with claimant's counsel, the ALJ expressly considered Dr. Whitley's statements regarding Mock's anger and bipolarity issues, but noted that

> we have no decompensation, and the treatment [Mock underwent] at [one facility] is purely medication, and not group therapy, which go along with the fact that he doesn't like to be in groups or anything like that. So, the treatment [he received there] is just medication, and we don't have any decompensations. So, while I can certainly appreciate the limitation on the social, I tended to go toward the public angle and pretty much leave it at that.

Doc. 10-2 at 96.

4

10-2 at 87. But given the other limitations contained in the hypothetical, the VE conceded that "I'm not going to be able to [c]ite a lot of jobs, titles for such an individual." *Id.* at 88. On cross the VE further conceded that "if I added to [the ALJ's] hypothetical [Mock's attorney's condition] that he only had the occasional bilateral use at the light level, that would eliminate jobs at the light level. . . ." *Id.* at 89. After cross-examination, the ALJ amended his hypothetical to include the limitation that the individual could handle "no ladders, ropes, scaffolds, occasionally crawling;" the VE replied that his original opinion (the "night watchman," etc., jobs) would remain unchanged. *Id.* at 97.

## II. GOVERNING STANDARDS

Affirmance of the Commissioner's decision is mandatory if her conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotes and cites omitted).

It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotes and cites omitted). If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159. It cannot substitute its judgment for that of the Commissioner. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In response to the showing the claimant makes, the ALJ applies

> a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC to perform h[is] past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform h[is] past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work

6

experience. *Id.* § 404.1520(a)(4)(v). An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a VE. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 2015 WL 106620 at * 1 (11th Cir. Jan. 15, 2015).

### III. ANALYSIS

The ALJ applied that five-step sequential evaluation process here. Doc. 10-3 at 11-20. At step one, he found that Mock had not engaged in substantial gainful activity since April 1, 2006, the alleged onset date. *Id.* at 11. At steps two and three, he found that plaintiff has severe impairments (Osteoarthritis of the left wrist secondary to past trauma, and Bipolar Disorder). *Id.*

However, Mock does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. *Id.* at 12. That led the ALJ to determine at step four whether Mock has the RFC to perform his past relevant work, and if not, then (step five) whether Mock can make an adjustment for other work. The ALJ thus applied "paragraphs A & B" sections of the Social Security "Mental Disorders 12.04 (Affective Disorders) listings. In so doing, he

7

reviewed Dr. Whitley's records and found that at most Mock "has moderate difficulties" in the social interactivity area, and "mild" difficulties "[w]ith regard to concentration, persistence or pace. . . ." *Id.* at 13. He expressly found that Mock had experienced no "extended duration decompensation episodes." *Id.* He at most suffers "moderate difficulties" in the social function sphere. *Id.* at 12. Nor does he satisfy the "Paragraph C" criteria -- he neither alleged nor proved any episodes of decompensation. *Id.* at 13.

The ALJ made express credibility determinations on that score. E.g.: "I note that the claimant did not appear for his final consultative physical examination, which suggests that [his] allegations of pain are not completely credible. I also note that [Mock] testified that he had no issues with drugs or alcohol. However, the record indicates that [he] has used cocaine in the past. I find the claimant less credible." *Id.* at 15.

For steps four and five, then, the ALJ determined Mock's RFC and found that he was able to perform a restricted range of light work. Doc. 10-3 at 14. He then consulted a VE who, responding to the ALJ's hypothetical questions, opined that one with Mock's vocational profile

8

and RFC limitations could perform a significant number of jobs in the National economy. *Id.* at 14-15. The ALJ relied on the VE's testimony and the overall evidence to find plaintiff able to perform other work (though, not any past relevant work), so he is not disabled. Doc. 10-3 at 19-20.

Plaintiff faults that decision as not supported by substantial evidence because the ALJ failed to: (1) formulate a proper RFC -- he failed to properly account for Mock's non-exertional mental and bilateral manual dexterity limitations; (2) carry the SSA's burden at step five by giving only three possible jobs and no job numbers at all; and (3) properly analyze the VE's actual testimony. Doc. 11 at 1, 7-12.

**A. RFC**

Residual functional capacity measures what a claimant can do despite his credible limitations. *See* 20 C.F.R. 404.1545. It "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Harris v. Colvin*, 2014 WL 5844240 at * 6 (S.D. Ala. Nov. 12, 2014). It is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a).

Since the ALJ determined Mock's RFC, the burden shifts to Mock to show that the ALJ's decision is not supported by substantial evidence. *See Flynn v. Heckler*, 768 F.2d 1273, 1274 (11th Cir. 1985); *Harris*, 2014 WL 5844240 at * 6.

Mock insists that "[t]he ALJ failed to formulate a proper [RFC] with appropriate non-exertional mental and bilateral manual dexterity limitations." Doc. 11 at 7. He cites the ALJ's "moderate restriction in concentration" finding, and he insists the ALJ's hypothetical question is flawed because it failed to include a time element -- *how long* could the hypothetical worker focus on the task (e.g., watching a security monitor screen)? *Id.* at 8. Too, the ALJ's RFC allowed for concentration that could waiver during the day, and the VE's three jobs do not fit that RFC under the Dictionary of Occupational Titles. *Id.*

An ALJ must pose a hypothetical question that is accurate and supportable on the record, and that also includes all of the claimant's limitations or restrictions. *Wilson*, 284 F.3d at 1227; *Cameron v. Comm'r of Soc. Sec.*, 2014 WL 7251663 at *10 (M.D.Fla. Dec. 18, 2014). If the question fails to do that, then the ALJ's decision, if based significantly on the VE's testimony, is unsupported by substantial

evidence. *Pendley v. Heckler*, 767 F.2d 1561, 1562-63 (11th Cir. 1985) (where hypothetical question upon which VE based his testimony did not assume claimant's anxiety or depression, both of which ALJ found to be severe impairments limiting claimant's ability to work, ALJ's benefits-denial decision, which was based significantly on the expert testimony, was unsupported by substantial evidence).

"However, an ALJ need *not* include findings in the hypothetical that the ALJ has properly discounted or rejected as unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)." *Cameron*, 2014 WL 7251663 at *10 (emphasis added). He is free to reject VE testimony when it is not supported by record medical evidence. *Stone*, 2015 WL 106620 at * 2 ("The ALJ reasonably rejected VE testimony when the hypothetical was not supported by the record's medical evidence. The ALJ's determination that there were jobs in the national economy that Stone could perform is supported by substantial evidence.") (cites omitted).

Here the ALJ did not explicitly include in his hypothetical the "concentration" or "focus" *duration* upon which Mock insists (i.e., that Mock cannot even focus long enough to perform basic "security

monitor" tasks). But as the Commissioner correctly points out, doc. 13 at 11, the ALJ *did* include a "focus-based" limitation in his hypothetical, just not to the extent Mock wanted. See doc. 10-2 at 86-87 (amending his hypothetical question to the VE: "And I think there may have been a mention of a concentration limitation, although, I'm not clear on that, but I'll go ahead and add a restriction."). How *much* of a restriction the ALJ did not say, but the remainder of the ALJ's qualifying factors ("probably no higher than an SVP-2 and that the concentration may waiver during the day . . . ."), were sufficient enough to support the hypothetical posed to the VE.

In that regard, Mock testified that he reads books and magazines, and spends most of his day watching television. Doc. 10-2 at 73. Those are all activities, the ALJ found, which are inconsistent with his allegations of significant difficulty with maintaining attention and concentration.[5] And Dr. Whitley found that Mock would be "able to understand and follow simple work tasks." Doc. 10-3 at 17. To the

---

[5] Note that the ALJ was required to assess evidence Mock submitted on his nonexertional impairments. "'Nonexertional impairments may or may not significantly narrow the range of work a person can do.'" SSR 83–14, 1983 WL 31254 at *1 (S.S.A.1983). Non-exertional limitations affect a claimant's ability to meet the demands of jobs, other than strength demands. 20 C.F.R. § 404.1569a(c)." *Brooks v. Comm'r of Soc. Sec.*, 2014 WL 4346903 at *21 (M.D. Fla. Sept. 2, 2014).

extent the doctor accepted Mock's subjectively reported limitations, the evidence (including the above-mentioned credibility findings on Mock's claimed mental and physical limitations) authorized the ALJ to reject his projection that Mock would be "vulnerable to decompensate further due to sustained stress, demands, and pressure." Doc. 10-3 at 17.

Plaintiff, for that matter, has raised no issue of error regarding the ALJ's assessment of his credibility, and the ALJ's resulting assessment of his actual mental limitations, and the incorporation of those findings in the hypothetical that the ALJ posed to the VE. Mock is now simply cherry picking the evidence and asking it to be reweighed -- something this Court cannot do. *Reynolds-Buckley v. Comm'r. of Social Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) ("[s]imply because the ALJ chose not to adopt further limitations on [the claimant's] ability to walk or stand, does not mean the ALJ did not properly consider the alleged limitations.").

*Carson*, by the way, upheld an ALJ's RFC determination that the claimant there could "perform a limited range of light work" because "the ALJ fully discussed and evaluated the medical evidence, [the

claimant's] testimony, and the effect each impairment has on his daily activities." *Id.*; *see also Keffer v. Astrue*, 2013 WL 774198 at *10-11 (S.D. Ala. Feb. 28, 2013); *id.* at * 13 ("Keffer has failed to demonstrate that he is unable to perform the sedentary work of a surveillance system monitor, particularly in light of his admission that he spends most of his day reading and watching TV or sitting in his yard watching the birds."). Here the ALJ *extensively* discussed Mock's testimony and medical records. *See* doc. 10-3 at 12-19. At most Mock airs a generalized complaint about the result (hence, he is simply reweighing the evidence in his favor).

The Court also rejects Mock's argument that the ALJ's RFC determination failed to properly account for claimant's bilateral manual dexterity limitations. If anything, the ALJ went beyond what the evidence required by assuming -- during follow-up VE questioning -- an even lesser capability in this area of functionality. Too, there is no showing that the relatively simple jobs the VE stated are beyond Mock's ken. To that end, the ALJ was authorized to credit Dr. Vijitha Prasad's opinion on Mock's RFC capacity, and was additionally authorized to note (in making credibility determinations about Mock's

testimony on his own limitations) Mock's persistent failure to appear at a second or follow-up examination. Doc. 10-3 at 18. Again, Mock's arguments simply reflect a mere disagreement with and reweighing of the medical evidence.

### B. Job Numbers and VE Testimony

Contrary to Mock's argument (doc. 11 at 10), the VE *did* provide evidence of a substantial number of jobs in the national economy. *See* doc. 10-2 at 87. This Court cannot disturb the ALJ's decision merely because, as Mock complains here, the decision failed to explicitly note those numbers (there the ALJ said only that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," doc. 10-3 at 19). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision. . . ." *Dyer*, 395 F.3d at 1211. Instead, "the ALJ must state with some measure of clarity the grounds for his decision." *Winschel*, 631 F.3d at 1179 (quotes and cite omitted). The ALJ did that here.

### III. CONCLUSION

Based on the foregoing, the Court should **AFFIRM** the Commissioner's decision and **DISMISS WITH PREJUDICE** this

case.

**SO REPORTED AND RECOMMENDED** this 22nd day of January, 2015.

                                                                              UNITED STATES MAGISTRATE JUDGE
                                                                              SOUTHERN DISTRICT OF GEORGIA